1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GEOFF WINKLER,

      Plaintiff(s),

v.

WELLS FARGO BANK, N.A.,

      Defendant(s).

Case No. 2:23-cv-00703-GMN-NJK

**Order**

[Docket No. 120, 122]

Pending before the Court Defendant Wells Fargo's motion to compel discovery. Docket Nos. 120, 122. The Receiver filed a response in opposition. Docket No. 124. Wells Fargo filed a reply. Docket No. 126.[1] The motion is properly resolved without a hearing. Local Rule 78-1. For the reasons discussed below, the motion to compel discovery is **GRANTED** in part and **DENIED** in part.

## I.       BACKGROUND

This case arises out of an alleged Ponzi scheme run by Matthew Beasley and Jeffrey Judd. Docket No. 1 at ¶¶ 26-38. The Receiver brings various state law claims against Defendant Wells Fargo related to its handling of Beasley's IOLTA account. *See, e.g.*, *id.* at ¶¶ 179-225.

On March 11, 2024, Wells Fargo served requests for document production on the Receiver. *See* Docket No. 120-4 at 12-26. The Receiver served responses and the parties conferred. *See, e.g.*, *id.* at 2-3. On July 5, 2024, the Receiver served amended responses. *Id.* at 28-71. Wells Fargo deposed the Receiver on October 9, 2024. *Id.* at 115-137. On November 26, 2024, Wells Fargo brought the instant motion to compel further production of documents. Docket No. 120.

---

[1] The Court cites herein to the CMECF pagination, as opposed to the native pagination in the parties' filings.

## II.    SEALED MATERIAL

The Court begins with the requests for secrecy for information within the filed papers. Wells Fargo filed a redacted brief on the public docket, Docket No. 120, along with an unredacted version under seal, Docket No. 122. Wells Fargo also filed redacted versions of five exhibits on the public docket, *see* Docket No. 120-4 at 11-97 (Exhibits A, B, C, D, and E), along with unredacted versions under seal, Docket Nos. 122-1, 122-2, 122-3, 122-4, 122-5. Wells Fargo also filed another exhibit under seal. Docket No. 122-6 (Exhibit O).

A.    Standards

There is a strong presumption of public access to judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).[2] Parties seeking to keep secret from the public documents filed in relation to non-dispositive motions must make a "particularized showing" of "good cause." *Id.* at 1180 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The Ninth Circuit has made clear that secrecy of judicial filings may be appropriate when the records could become a vehicle for improper purposes, such as the use of the records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Kamakana*, 447 F.3d at 1179. On the other hand, "[t]he mere fact that production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* A party seeking to file documents under seal bears the burden of overcoming that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

Any request to seal must be "narrowly tailored" to remove from the public sphere only material that warrants secrecy. *Harper v. Nev. Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1040- 41 (D. Nev. 2021) (citing *Ervine v. Warden*, 214 F. Supp. 3d 917, 919 (E.D. Cal. 2016)). To the extent any confidential information can be easily redacted while leaving meaningful information available to the public, the Court must order that redacted versions be filed rather than sealing

---

[2] The Ninth Circuit has made clear that district courts are tasked with protecting the public's right to access, so the fact that the parties may agree on secrecy does not end the inquiry. *Allegiant Travel Co. v. Kinzer*, 2022 WL 2819734, at *1 n.1 (D. Nev. July 19, 2022)

1    entire documents.  *See Foltz*, 331 F.3d at 1137; *see also in re Roman Catholic Archbishop of*
2    *Portland in Ore.*, 661 F.3d 417, 425 (9th Cir. 2011).

3        With respect to enumerated personal identifying information, redaction is mandated by the
4    governing rules without the need to seek leave of the Court. See Fed. R. Civ. P. 5.2; see also Local
5    Rule IC 6-1.

6        B.    Exhibit O

7        Exhibit O is the Receiver's declaration from October 31, 2024.  *See* Docket No. 120-4 at
8    178 (placeholder); Docket No. 122-6 (unredacted version filed under seal).  Wells Fargo asks that
9    the 18-page declaration be sealed in its entirety or, alternatively, that redactions be permitted with
10    respect to certain paragraphs.  *See, e.g.*, Docket No. 127-1 at 1.  Wells Fargo's contentions are
11    unsupported in fact or law.

12        The Court begins with the overarching request to seal this entire document based on alleged
13    sensitivity of some of the paragraphs therein.  *See id.*  The Court has already identified to the
14    parties in this case the binding Ninth Circuit authority requiring redactions rather than sealing
15    whenever feasible.  *See* Docket No. 125 at 2 (citing *Foltz*, 331 F.3d at 1137 and *Roman Catholic*
16    *Archbishop*, 661 F.3d at 425).  The showing made as to secrecy for this lengthy declaration is that
17    it "describ[es], quot[es], or discuss[es] Wells Fargo's internal records and communications."
18    Docket No. 127 at 10.  Wells Fargo only attempts to identify some of the paragraphs within the
19    declaration as fitting that description, *see* Docket No. 127-1 at 1, leaving large swaths of
20    information with no articulated basis for secrecy.  Allowing sealing of this entire document would
21    be contrary to law.

22        Nor is redaction even warranted.  The bulk of the request for secrecy turns on Wells Fargo's
23    contention that roughly two dozen paragraphs in the Receiver's declaration address Wells Fargo's
24    proprietary information.  *See* Docket No. 127 at 7; Docket No. 127-1 at 1.  The Court has read
25    (and re-read) the subject paragraphs and cannot discern how any of the information discussed fits

26

27

28

the bill.[3]  The Court will take the first paragraph identified as an example.  That paragraph provides as follows:

> 10.     The purpose of this Declaration is to describe for the benefit of the Parties and the Court the genesis, nature, and operations of the J&J Investment Scheme, including the relevant fundraising and banking activity of the Receivership Entities, the role of persons who acted as primary promoters of the investment opportunity, and the actual use of funds entrusted to the Receivership Entities, including the failure of Mr. Beasley to apply the funds entrusted to him in conformity with the promises made to investors.  Based on my assessment of the Receivership Entities' records and operations, I identify the key bank accounts involved in the scheme and provide a general description of the flow of funds through those bank accounts.  I also provide an overview of the investor base, and the interactions of investors with the Promoters and the Receivership Entities.  This Declaration reflects the nature of the testimony that I may give at trial.

Docket No. 122-6 at ¶ 10.  While that statement may allude in general terms to "bank accounts" and the "flow of funds," there is nothing confidential being discussed therein.  Indeed, Wells Fargo itself cannot point to any of its own confidential information being disclosed within these paragraphs, falling back on vague speculation that the Receiver's "information was *ostensibly* derived, in whole or in part, from confidential material produced by Wells Fargo."  Docket No. 127 at 7 (emphasis added); *see also id.* (acknowledging "Wells Fargo's inability to discern what the Receiver relied upon").  Arguing that statements might somehow have been derived from confidential information is a far cry from the "particularized showing" of good cause required for secrecy, *see, e.g.*, *Kamakana*, 447 F.3d at 1180, and effectively asks the Court to commit legal error by allowing secrecy, *see, e.g.*, *id.* at 1179 (courts must articulate reasoning to support an order for secrecy that is free from "hypothesis or conjecture").

Lastly, Wells Fargo seeks to redact two paragraphs that it says include "Third Party PII & Financial Information" of Beasley.  *See* Docket No. 127-1 at 1; *see also* Docket No. 127 at 10-11. While the Court previously invoked Rule 5.2(a) of the Federal Rules of Civil Procedure as a basis to redact personal identifying information, the Court was in no way implying that any and all nonparty information should be redacted on this ground.  *See* Docket No. 125 at 2 (referencing the

---

[3]  Without elaboration, the Receiver indicates that he "disputes" that this declaration summarizes or reflects Wells Fargo's confidential information.  *See* Docket No. 127 at 7.

"*enumerated* personal identifying information" in Fed. R. Civ. P. 5.2 and Local Rule IC 6-1 (emphasis added)).  A simple review of the cited rule would disabuse any such contention:

> (a) **Redacted Filings**.  Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:
>
>> (1) the last four digits of the social-security number and taxpayer-identification number;
>>
>> (2) the year of the individual's birth;
>>
>> (3) the minor's initials; and
>>
>> (4) the last four digits of the financial-account number.

Fed. R. Civ. P. 5.2(a); *accord* Local Rule IC 6-1.  Hence, the plain language of the rule provides that (as an example) the last four digits of a financial-account number <u>need not be redacted</u>.[4] Although unclear because no elaborated argument is presented, it appears that Wells Fargo is seeking redaction of these two paragraphs because they contain the last four digits of two bank accounts.  *See* Docket No. 122-6 at ¶¶ 20-21.[5]  As stating on the public docket the last four digits of a bank account number is precisely what the governing rule envisions, the Court fails to understand why Wells Fargo is asking for something different here.

Accordingly, the Court will not permit secrecy as to the Receiver's declaration from October 31, 2024.  *See* Docket No. 120-4 at 178 (placeholder); Docket No. 122-6 (unredacted version filed under seal).  Moreover, because the underlying brief was redacted solely based on its quotation from this declaration, *see* Docket No. 127 at 16, the Court will also not permit secrecy for that brief, *see* Docket No. 120 (redacted version); Docket No. 122 (unredacted version filed under seal).

---

[4] If there is some particular need for more sweeping redaction in the circumstances of a case, then the movant must make an additional showing of good cause to support that request.  *See* Fed. R. Civ. P. 5.2(e).

[5] To be clear, the information at issue is not regarding a nonparty with little connection to the case; it addresses the accounts of the alleged Ponzi scheme mastermind, Beasley, who has been implicated in a publicly-disclosed indictment.  The papers fail to show any need for secrecy as to Beasley's alleged actions when they are also subject to public criminal proceedings.

C.      Exhibits A, B, C, D, and E

Wells Fargo asks the Court to allow redaction of each of these exhibits as to "investor names." Docket No. 127 at 8.  The Receiver indicates without elaboration that he "maintain[s] that orders in the S.E.C. action protect banking and account information of purported investors, such that names should be redacted. *Id.* at 11.  Such a contention is completely unhelpful, however, because the S.E.C matter has more than 750 docket entries and the Receiver has not provided any docket number or entry date for the orders to which he apparently refers.  The Class Plaintiffs "agree that PII should be redacted pursuant to Federal Rule of Civil Procedure 5.2 and Local Rule IC 6-1." *Id.*  At bottom, according to the parties' filing, these redactions are sought "pursuant to FRCP 5.2(a) and LRIC 6[-]1." Docket No. 127-1 at 2.

There are several obvious problems with this request.  The Court begins with the fact that the parties represented that the redaction is for "investor names," but the redactions go beyond names.  *See, e.g.*, Docket No. 122-3 at 8; Docket No. 122-4 at 6; Docket No. 122-5 at 6.  Making matters worse, one of the exhibits literally says that the entity at issue "is not an investor."  Docket No. 122-4 at 6.  Hence, the representation that these are redactions for "investor names" is not consistent with the record.

The next obvious problem is that one of the so-called "investors" is a company, but no argument or explanation is provided as to how the name of a company is a "personal" identifier as contemplated by the cited rules.  *See* Local Rule IC 6-1(a); *see also* Fed. R. Civ. P. 5.2(a) (addressing protection for "individual[s]").  Relatedly, the Court has been provided no reason why the identity of a company is sufficiently sensitive to warrant secrecy.

The next obvious problem is that, even with respect to the name of the natural person identified, neither Rule 5.2(a) of the Federal Rules of Civil Procedure nor Local Rule IC 6-1 provides for redaction of the name.[6]  The closest either rule comes is to require the use of <u>initials</u> for <u>minor children</u> referenced in judicial filings.  *See* Fed. R. Civ. P. 5.2(a)(3); Local Rule IC 6-1(a)(2).  Hence, no explanation is provided as to how these rules support the redactions requested.

---

[6] The Court also notes that the case law cited does not appear to address a request to redact nonparty names.  *See* Docket No. 127 at 10-11.

6

Notwithstanding the deficiencies in the parties' papers, the Court is mindful that the Ninth Circuit has elsewhere recognized privacy interests that are advanced by allowing redaction of nonparty identifying information, including their names. *See Foltz*, 331 F.3d at 1137. Consistent with the governing rules, however, it is not clear that the person's name should be redacted in its entirety, so the Court will require redactions that do not obscure the person's initials. *Cf.* Fed. R. Civ. P. 5.2(a)(3).

Accordingly, of the subject redactions to these exhibits, the Court will allow only that the natural person's name be obscured with their initials remaining visible to the public.

## III.    MOTION TO COMPEL

Having resolved the request for secrecy, the Court turns to the motion to compel.[7]

### A.    Standards

"The discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). When an amicable resolution to a discovery dispute cannot be attained, however, a party seeking discovery may move the Court to issue an order compelling that discovery. Fed. R. Civ. P. 37(a). The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019). "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

### B.    Analysis

The motion to compel seeks production of documents Wells Fargo argues are responsive to eight requests. The parties group the matters in dispute into three categories, which the Court will also do below.

---

[7] The Court will not address every argument raised in the papers. Any argument not addressed explicitly herein has been rejected to the extent it is inconsistent with the outcome of the order. *See, e.g.*, *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1099 (D. Nev. 2022).

1.    Communications with Promoters

Wells Fargo served Request for Production 6 for "[a]ll [d]ocuments and [c]ommunications between [the Receiver] and any of the Promoters." Docket No. 120-4 at 18. The Receiver objected to this request on a number of grounds, but agreed to produce a subset of communications discussing wrongdoing or involvement of Wells Fargo in the alleged Ponzi scheme. Docket No. 120-4 at 38. During conferral efforts last summer, the parties agreed that the Receiver would search emails using Promoters' names in the "To" and "From" fields that have the word "Wells Fargo" in the body of the email. Docket No. 120-4 at 110; *see also* Docket No. 120-4 at 105. Wells Fargo now seeks an order compelling a further production based on deposition reference to more recent text messages and to testimony Wells Fargo interprets to mean that the earlier undue burden objection was not well-founded. *See* Docket No. 122 at 9-17.

The Court is at a loss as to why motion practice was deemed warranted here. The Court begins with the agreement regarding the Receiver's search for emails. The conferral requirements "are very important and the Court takes them very seriously." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 302 (D. Nev. 2019). Judges within this District (including the undersigned) routinely hold parties to their discovery agreements reached during the meet-and-confer process. *See, e.g.*, *Underwood v. O'Reilly Auto Enters., LLC*, 2022 WL 4359096, at *2 (D. Nev. Sept. 20, 2022). Nonetheless, Wells Fargo insists that it should not be bound by its discovery agreement identified above because the Receiver allegedly lied about the burden of producing responsive emails. *See* Docket No. 122 at 16 (alleging that the Receiver's representations regarding burden "turned out to be untrue").[8] A party lobbing an accusation of fraud and deceit against a fellow officer of the Court is expected to provide firm supporting evidence. *Cf. Taddeo v. Am. Invsco Corp.*, 2015 WL 751072, at *1 (D. Nev. Feb. 20, 2015). Wells Fargo's interpretation of the deposition testimony does not provide such foundational footing, however, as explained by the Receiver. *See* Docket

_____

[8] Wells Fargo strains credulity in characterizing the conferral efforts as just one step in the iterative process not meant to be an "agreement" to resolve in full this request or this dispute. *See* Docket No. 122 at 16-17. The record is to the contrary. Docket No. 120-4 at 105 (raising this proposal explicitly "for purposes of resolving the discovery dispute" and asking for confirmation that "this search is agreeable to Wells Fargo and resolves this Request").

No. 124 at 36-37 (declaration of Geoff Winkler); *see also* Docket No. 120-4 at 123 (deposition testimony that emails are stored on a server, but are not within a file with a specific name).[9]

The shoe is on the other foot with respect to text messages. While the Court would tend to agree with the Receiver that the prior agreement forecloses a requirement to produce text messages with Promoters, the Receiver offered to reopen that agreement to produce these text messages as a means to resolve this dispute. Docket No. 120-4 at 189 ("the Receiver offers to produce his text messages with Promoters to (again) fully resolve Wells Fargo's purported claim to communications with Promoters. Please let me know if this is agreeable"). The Receiver has provided lengthy argument now as to the insignificance of these text messages and objections that he contends apply to them, but the Court also generally holds parties to the compromise positions that their counsel took during the conferral process. *E.g.*, *D.S. v. Clark Cnty.*, 2023 WL 3584256, at *2 n.5 (D. Nev. May 22, 2023). What the Receiver wanted during the conferral process was to produce text messages but not produce further emails. Given that position, it is not clear why the Receiver is arguing at length now that he should not be required to produce text messages.[10]

Accordingly, this aspect of the motion to compel will be denied as to responsive emails and granted as to responsive text messages.

2.    Notes and Memoranda from Meetings with Beasley and Promoters

Wells Fargo served requests for production seeking the notes and memoranda concerning the Receiver's meetings or communications with promoters. *See, e.g.*, Docket No. 120-4 at 152 (Request for Production No. 63). The resolution of this aspect of the motion to compel will once

---

[9] Wells Fargo's arguments sometimes morph into an accusation that the Receiver has not disclosed all of the evidence on which the Receiver is relying in pursuing this litigation. *See, e.g.*, Docket No. 122 at 13-14. In the event a party tries to rely on evidence that was not properly disclosed, there is separate recourse to address that issue at an appropriate juncture. *See, e.g.*, Fed. R. Civ. P. 37(c)(1). That issue is not currently before the Court.

[10] Wells Fargo asserts that it "disagree[s] that the production of the text messages and emails should be linked together." Docket No. 122 at 15. If Wells Fargo did not want to link text messages and emails together, then Wells Fargo should not have drafted a request to produce all "communications." Moreover, the Court does not condone a tactic of serving duplicative discovery requests as a maneuver to avoid limitations applicable to prior discovery. *Cf. Certified Nutraceuticals, Inc. v. Clorox Co.*, 2020 WL 4339489, at *3-4 (S.D. Cal. July 28, 2020). Nonetheless, the Court will order the text messages to be produced for the reasons discussed above.

again rise and fall on the conferral efforts.  The Receiver objected to this request on many grounds, including through the assertion of the work product doctrine.  *Id.* at 164.[11]  While the Receiver provides argument on that objection in his responsive brief, the objection itself does not detail the basis for that objection and (according to the reply) the Receiver did not provide this explanation during the conferral process.  *See* Docket No. 126 at 12 ("[D]espite the hours of meet and confer discussions, the arguments made by the Receiver in his Opposition as to privilege are the first time that the Receiver's position was articulated in any detail to Wells Fargo").  Not only does that circumstance presumably deprive Wells Fargo of the opportunity to properly address work product protection in its opening motion papers, but it also presumably contributed to the ill-developed briefing regarding the potential requirement for a privilege log and Wells Fargo's argument as to a substantial need for the information.

This is assuredly not how the conferral process or motion practice is meant to proceed.  The conferral process is subject to an overarching requirement of good faith and is meant to be robust in nature.  As explained by former United States Magistrate Judge Lawrence R. Leavitt:

> the parties must present to each other the merits of their respective positions with the same candor, specificity, and support during informal negotiations as during the briefing of discovery motions.  Only after all the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be a "sincere effort" to resolve the matter.

---

[11] "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  As the plain language of the rule makes clear, "a lawyer need not be involved at all for the work product protection to take effect."  *Goff v. Harrah's Operating Co.*, 240 F.R.D. 659, 660 (D. Nev. 2007); *see also Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015).  Instead, the key questions are whether (1) the document was prepared in anticipation of litigation or for trial (2) by or for a party.  *See in re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (holding that documents created by investigator were protected as work product).  Work product protection may extend to "raw factual information," *Kandel v. Bro. Int'l Corp.*, 683 F. Supp. 2d 1076, 1084 n.5 (C.D. Cal. 2010) (quoting *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000), including "a factual statement obtained from a witness" in anticipation of litigation, *RKF Retail Holdings, Inc. v. Tropicana Las Vegas, Inc.*, 2017 WL 2292818, at *5 (D. Nev. May 25, 2017); *see also, e.g., O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642-43 (C.D. Cal. 2003); *in re Convergent Techs. Second Half 1984 Securities Litig.*, 122 F.R.D. 555, 557-58 (N.D. Cal. 1988).  The party claiming work product protection bears the burden of establishing the predicate requirements.  *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995).

*Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993); *accord Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145 (D. Nev. 2015).  Quite plainly, a litigant is not permitted to raise boilerplate objections, hide in the weeds during the conferral effort, and then surprise his opponent with newly developed argument in responding to a motion to compel.  Not only does such tactic lead potentially to matters being briefed unnecessarily, it also leads to poorly organized and poorly developed argument in the briefing that is filed.

Given Wells Fargo's representation that this issue was not properly addressed during the conferral process, the Court declines to resolve this aspect of Wells Fargo's motion on its merits.[12]  Accordingly, this aspect of the motion to compel will be denied without prejudice to the parties engaging in robust, good faith conferral efforts.

3.    Communications with Bank of Nevada

Wells Fargo served Request for Production 67 for "[a]ll [c]ommunications between [the Receiver or his staff] and the Bank of Nevada related to Beasley or [the Receiver's] claims against Wells Fargo."  Docket No. 120-4 at 153.  The Receiver argues now that the communications with the Bank of Nevada are irrelevant and that the request imposes an undue burden and is not proportional to the needs of the case.  Docket No. 124 at 27-29.  The Receiver's objections lack merit.

The Court begins with the relevance objection.  Discovery must be "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevance for discovery purposes remains broad in nature.  *See, e.g.*, *V5 Technologies*, 334 F.R.D. at 309.  The Receiver's own declaration explaining the alleged Ponzi scheme at issue itself references this type of information:  "Mr. Beasley reports that Bank of Nevada . . . told him to close his accounts because he was withdrawing too much cash.  As a result, Mr. Beasley could no longer bank at the Bank of Nevada."  Docket No. 122-6 at ¶ 20.  Hence, the Receiver himself views the Bank of Nevada's account closure to be a

---

[12] It would appear at first blush that the documents in dispute are well within the scope of work product protection, but Wells Fargo should have been put on notice of the arguments on that issue so as to properly target its motion and provide well-developed argument on issues like any required privilege log and substantial need.

significant fact as to Wells Fargo's liability.[13]   The Court similarly finds that communications responsive to this request may provide insight into Bank of Nevada's dealings with Beasley and are relevant to the claims in this case.

The Receiver's undue burden argument is also not persuasive.   A party claiming that discovery imposes an undue burden must "allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Assoc.*, 316 F.R.D. 327, 334 (D. Nev. 2016) (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997)).   "[P]rotection from discovery does not flow from a finding of cost or inconvenience, which is inherent in all discovery, but from a finding that the cost or inconvenience is *undue* when weighed against the likely benefit of the discovery."   *PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 439 (D. Nev. 2023) (emphasis in original). As to the utility of the discovery, the Receiver himself has made clear his position that the Bank of Nevada's account closure is significant to Wells Fargo's liability.   Moreover, the gist of the burden showing is that there are many emails and documents related to the Receiver's investigation, such that searching them all will be too time-consuming. *See, e.g.*, Docket No. 124 at 36.[14]   In this age of modern technology, it would seem plain that a reasonable search can be developed that does not unduly tax financial or time resources.   Given the above, the Court is not persuaded by the Receiver's undue burden argument.

Accordingly, this aspect of the motion to compel will be granted.   The Receiver must engage in a reasonable search for responsive documents.   If that search does not result in finding

---

[13] Although framed as a relevance argument, the Receiver appears to argue at times that no responsive written communication exists.  Docket No. 124 at 27-28.  Of course, to make such a representation properly, a litigant must first undertake a reasonable <u>search</u> for responsive documents.  *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366 (D. Nev. 2019) (collecting cases).  That need to conduct a reasonable search exists in any case, but is particularly important when a litigant has testified under oath at a deposition to possessing a responsive written document. Docket No. 126-1 at 15; *see also Ashcraft v. Welk Resort Grp., Corp.*, 2017 WL 5180421, at *5-6 (D. Nev. Nov. 8, 2017) (addressing limitations on deposition errata).

[14] The Receiver sometimes frames this objection as addressing proportionality, though it appears to overlap entirely with his contention of undue burden.  A proportionality  objection requires balancing of numerous considerations that were not addressed in the briefing.  *See* Fed. R. Civ. P. 26(b)(1).  A boilerplate objection of disproportionality is not sufficient.  *On Demand Direct Response, LLC v. McCart-Pollak*, 2018 WL 2014067, at *3 (D. Nev. Apr. 30, 2018).

1  responsive documents, the Receiver must certify to not possessing responsive documents per Rule
2  26(g) of the Federal Rules of Civil Procedure and must attest to the details of the search conducted.

3  **V.      CONCLUSION**

4          For the reasons discussed above, the motion to compel discovery is **GRANTED** in part
5  and **DENIED** in part.  As to the aspects of the motion to compel that are granted, the Receiver
6  must comply with this order by March 28, 2025.

7          In addition, the Court **INSTRUCTS** the Clerk's Office to unseal Docket No. 122-6 and
8  Docket No. 122.  The Court **INSTRUCTS** the Clerk's Office to continue maintaining under seal
9  Docket Nos. 122-1, 122-2, 122-3, 122-4, and 122-5.  Consistent with the ruling in Section III.C.,
10 however, Wells Fargo must redact the natural person's name on the identified exhibits while
11 leaving their initials visible to the public.  Wells Fargo must file a notice attaching these exhibits
12 with the limited redactions by March 28, 2025.

13         IT IS SO ORDERED.

14         Dated: March 11, 2025

15                                                        _____
16                                                        Nancy J. Koppe
                                                          United States Magistrate Judge